Judge Fleming
concurred, and thereupon a subpoena duces tecum was awarded to the Clerk of the District Court, and another to the Clerk of the County Court, both returnable the 13th of May.
Mr. Hay then submitted the following propositions to the Court.
1. The pretended testamentary words were not a good nuncupative will under our act of Assembly ;(a) because . the last illness of the decedent did not commence at the place where he died; neither was he taken sick from home.
2. The decedent was not sufficiently in his senses to make a will. His supposing a desk to be his which notoriously was the property of Mr. Bryant was a plain proof .of the wandering of his fancy and defect of his intellects.
3. If he was in his senses, the omission to insert the desk in the written memorandum or .certificate of the will was fatal; because the whole of the testamentary words, or the substance thereof, should have been committed to writing within six days after making the will. (b)
*97 Saturday, 3.1ay 13. In obedience to the writ of subpeena duces tenon, the Clerk of Prince George attended with the original will, which, on inspection, was found to have been truly copied in the record. The bequests contained in it were, in substance, as above mentioned in cur summary of the evidence, and no suspicious circumstance appeared on its face.
Thursday, May 13. The Judges pronounced their opinions.
Judge Tucker.
Travis Womack, a young man, un* inarried, on a Sunday in October, 1803, having been for some time in bad health, mounted his horse at City Point, where he resided as a boarder in the family of Mr. Garey, and rode twelve miles to the house of the appellee Bryant, whose wife was WomacPs sister, where be arrived so ill, that he took to his bed, and died the following Sunday. During his illness be made a nuncupative will, whereby he left a negro woman, worth about 45/. to the appellants, Marks and wife, which is the subject of the present controversy»
The first question which seems to have presented itself, is whether any nuncupative will made by the deceased under these circumstances would be valid. The doubt seems to arise from these words in ihe law. “ No nuncu- “ pative will shall be established unless it be made in the 44 time of the last sickness of the deceased, at his habitation, w,‘ or where he hath resided for ten days next preceding, ex*» “ cept where the deceased was taken sick from home, “ and dies before he returns to such habitation.” L. V. ed. 1794. c. 92. sec. ,5. Now, as the deceased was not ten. days at the place where he died, before that event happened, and is proved to have been very sick before and even when he left his usual habitation, it seems to be questioned whether be could be said to be taken sick from home.
I conceive it would be adhering too closely to the letter ef the law, if we were to pronounce that no nuncupative *98 will made under such circumstances ought to be es< tablished. The object of the law was to prevent frauds and impositions upon sick persons, by enticing them from their friends and relations, to the residence of strangers, where advantage might be taken of their weakness and infirmity; or where such pretended wills might be fabricated without the desire, or even knowledge, of the deceased, or any of his friends. The decedent in the present case, set out on a visit to his sister, arid her husband: he thought himself able to ride so far ; in this he proved not to have been literally mistaken, though probably the journey hastened his death. He was a mere sojourner at City Point. He had no mansion-house there, nor was he in the family of his father, mother, or other near relation, there. He went to the house of his nearest, or one of his nearest relations, the very persons who now contest .this will. Although he was not first taken sick there, he was taken so much worse than he had been before, as never to leave the house again ; it appears to me, therefore, that the case is so far fully within the true intent and meaning of the law.
With respect to the sanity of the testator, and the proof that he meant to give these little tokens of his gratitude and affection to his relations, one of whom had been hip guardian, I feel not the least doubt either of his capacity^ or intention to make such a disposition, and therefore am of opinion, that the judgment of the District Court be reversed, and that of the county Court affirmed.
Judge Roane.
Upon the testimony in this cause, it is dear that the testator was fully competent to dispose of his estate at the time of making the will in question; and that he made a serious and solemn disposition of the property comprised in the same, and desired the persons present to take notice thereof.
Two objections, however, are made in point of lawj
t. That the substance of the will in relation to the whole *99 property bequeathed by him at the time, was not reduced to writing within six days ; and, 2d. That the testator was not taken sick EROM home, and consequently had no power to make a nuncupative will under the provisions of our act.
As to the first objection, it does not apply to this case. In this case two months had not elapsed between the date of the bequest and the offering the will for probate in Prince George Court. The act only provides that after six months have elapsed from the time of speaking the pretended testamentary words, no evidence shall be received to establish them, unless the testimony, or the substance of it, was reduced to writing within six day's. The reason of this is obvious; but it does not apply in the case before us ; and, therefore, as to the desk which is said to have been bequeathed at the time, but not mentioned in the memorandum, the bequest of it might, notwithstanding, have been established as a part of the will 'ey' oral testimony, at any time within six months. The bequest of the desk ought, upon the testimony, to have been added to, and made part of the nuncupative will, had it been proved by two witnesses other than a legatee: but, as it is, this bequest was rightly omitted as a part of the will, because it could not have been proved, otherwise than by the testimony of the legatee herself. I infer this • nder the reason at least of the 9th section of the act concerning wills.(a)
As to the next point: under the statute of Car. II. in England, and our former act on this subject,(b) no nuncupative will is good when it is made from the home of the party, unless the testator has been 44 surprised., or taken 44 sick at the place where the will is made and Bluckstone,(c) commenting on the English statute, say s, that 44 favour should not be shewn to nuncupative wills, unless 44 the party has been surprised by sudden and violent 44 illness.” This would seem to limit nuncupative wills made from the home of the parties to cases in which the party was convalescent when he left home, and was taken *100 ill for the first time after he had left it. In our act of 178a, however, this word “ surprisedf is omitted;(a) whence I infer, that a will may still be established as a nuncupative will, although the party was unwell when he left home ; if afterwards he was taken more dangerously ill at the place at which the will was made, and of which illness he afterwards died. I cannot on any other ground account for the omission of the word “ surprised,” in the act of 1785.
It is in proof in this case that the party was indeed very unwell when he left home ; but his disorder was, perhaps, only the ague and fever, which, generally, is not mortal, and he was well enough at the time, to ride twelve miles on horseback. His illness probably increased soon after his arrival at the place of his destination, and very possibly assumed its character of danger from the fatigue of the journey only. There is no evidence shewing that he was' taken with the illness of which he died prior to his leaving home, though he was then unwell; and, on this ground, I hold this will to be authorized, under the true construction of the act of Assembly.
With respect to his bequeathing a desk which it is said belonged to another, it is at most only a circumstance whence to infer a state of mind unfavourable to the making of a testament: it is a circumstance which often happens with many testators who bequeath property not their own; and, in this case, that equivocal circumstance is outweighed by positive testimony, shewing a competency in the testator to make a will at the time in question,
I am therefore for reversing the judgment.

Rev.Code, vol. 1. c. 92. s. 5. p. 161.

 Ibid. s. 6,

 Rev. Code. vol. 1. p. 161.

 V. L. edit. of 1769, p. 161.

 Vol. 2. p. 501.

Rev.Code, vol. 1. p. 1612.